[Civ. No. 3227. Fourth Dist. Oct. 15, 1943.]

B & B SULPHUR COMPANY, LTD. (a Corporation), Respondent, v. ROBERT M. KELLEY et al., Appellants.

4

Glenn E. Tinder and Hugh E. Brierly for Appellants.

B. W. Kemper and C. C. Caswell for Respondent.

GRIFFIN, J.—In July, 1928, H. B. Sample, James Pierce, and S. E. Montgomery located and filed notices of location of certain mining claims in Inyo County known as Gulch Lode No. 1 and No. 2. Frank Rossi and the above named locators located and filed notices of location of Gulch Lode Nos. 3 to 10 inclusive. A "Lease and Purchase Agreement" was executed on March 20, 1939, to plaintiff corporation herein as lessee. It recited that James Pierce, A. J. Seeley, H. B. Sample, T. N. Wade, and Mijo Milovich were lessors. It bore only the signatures of Wade, Milovich and Pierce. It was recorded on April 13, 1939. Plaintiff corporation commenced production of sulphur soon thereafter. In March, 1939, a fire destroyed much of the workings of the mine.

It is alleged in the complaint for ejectment that defendants, on July 1, 1940, unlawfully entered and took possession

of the Gulch Lode claims Nos. 1 to 10 inclusive; that they posted notices of location of the Joiner group of claims Nos. 1 to 6 inclusive, and that such location embraced part of the Gulch Lode claims. On September 21, 1940, plaintiff corporation filed this action seeking to declare the subsequent locations void and to eject all defendants named. Defendants Kelley and Farrell appeared by answer. Thereafter, upon filing an affidavit of service of summons on the two defendants Phelps, their default was entered by the clerk. No original summons or affidavit regarding military service of those defendants was filed and they made no appearance. The court found that plaintiff corporation was entitled, as lessee, to possession of the premises as against defendants Kelley, Farrell, Heller G. Phelps, and all persons claiming under them, and that they had no right, title or interest in the Gulch group of claims or any part thereof. Judgment was accordingly entered only against Kelley and Farrell and they have appealed from such judgment.

Appellants first contend that the case was not in a proper condition to be tried on May 26, 1940, by reason of the claimed erroneous *entry of default* of the Phelps; that they were necessary parties to the action. In this connection it is argued that without an affidavit that a defendant is not in the military service, under sections 520 and 521 of the Soldiers and Sailors Civil Relief Act of 1940 (50 U.S.C.A. [Appendix p. 146]) no default could be properly entered against such defendants except by order of court; that because of the fact that the source of title of these defaulted defendants was identical with that of the other defendants, Farrell and Kelley, no proper disposition of the latter's rights could be made in this action. We see no merit to this contention.

First, appellants here cannot make this complaint for the first time on appeal. (*Evans* v. *Baxter,* 86 Cal.App. 412 [260 P. 832]; *Alhambra B. & L. Assn.* v. *DeCelle,* 47 Cal. App.2d 409 [118 P.2d 19].) Secondly, this action is one for ejectment based on a wrongful act or tort of defendants. Defendants in a tort action are jointly and severally liable, and a plaintiff may proceed against the defendants served and who answer the same as though they were the only defendants. (Secs. 578 and 579, Code Civ. Proc.; *Trans-Pacific Trading Co.* v. *Patsy Frock & R. Co.,* 189 Cal. 509 [209 P. 357].) Thirdly, appellants here are not the parties who have the right to raise the objection to the alleged erroneous entry of default of the other defendants by reason of plaintiff's failure

to file an affidavit of nonmilitary service. (*Alzugaray* v. *Onzurez,* 25 N.M. 662 [187 P. 549]; *Pope* v. *United States F. & G. Co.,* 67 Ga.App. 415 [20 S.E.2d 618].)

 Sections 520 and 521 of that act are intended solely for the benefit of those in the armed services of the United States. (*Royster* v. *Lederle,* 128 F.2d 197.) The affidavit setting forth facts showing that a defendant is not in the military service should be made at the time of the *making and entry of the default judgment.* (*In re Cool's Estate,* 19 N.J. Misc. 236 [18 A.2d 714]; *Mader* v. *Christie,* 52 Cal.App. 138 [198 P. 45].) No judgment by default has been entered against the Phelps.

Appellants next argue that the plaintiff did not establish, by a preponderance of the evidence, its right to immediate possession of the mining claims in question in that it did not establish that the original location of the Gulch mining claims was a valid location.

At the trial the record of the original locations of the Gulch Lode claims 1 to 10 inclusive were received in evidence, giving the description thereof and the date of location. The lease and purchase agreement dated March 20, 1939, was recorded April 13, 1939, together with proof of annual labor on Gulch claims 1 to 13 inclusive, which was recorded on May 18, 1940. The record shows that Milovich individually owned some of the claims. Sometime prior to July 1, 1940, the plaintiff corporation had been in possession of the ten claims. Defendant Farrell had knowledge of this fact. He sold gasoline to it in 1939 and 1940. He testified that shortly before July 1, 1940, he went with Milovich to see the claims and helped him do his assessment work on his individual claim; that he observed that no work had been done on the claims here involved; that on July 1, 1940, he and the other defendants relocated the Joiner claims over and upon the Gulch claims; that they immediately started work on them; that he knew Milovich was interested in the Gulch claims.

Defendant Kelley testified that he first saw the claims in 1936; that he later saw them in 1939 when he was trying to buy a sulphur mine; that he saw a shaft being sunk on them; that in June, 1940, he went there for a load of sulphur and later for the purpose of relocating the above claims; that he was "looking for an opening," i. e., "for any property going to be relocated"; that he "went over about seven claims . . ."; that he didn't see any assessment work "that

had been done, that showed up"; that "it didn't show that any work had been done for at least seven or eight months"; that the four named defendants relocated the claims as partners about 2 o'clock in the morning on July 1, 1940; that they worked on them for the next 20 days in digging the open cut; that he "sold the machinery off from the claims for junk."

Both plaintiff and defendants offered in evidence an affidavit of annual labor performed on the claims. A Mr. Beal, secretary to the plaintiff corporation, testified that the corporation was organized for the purpose of acquiring a lease on the claims here involved; that it started mining operations about March 1, 1939; that it hired as many as eight men at one time, built the refinery, and continued business until October, 1939; that tunnel work, road building and mining had been done; that about five or six hundred tons of crude ore had been extracted from the "Fraction" claim in July, August and September, 1939; that because there was no grinding plant at the mine a refinery was built several miles up the gulch in the fall of 1939; that between March and October 6, 1939, about $8,000 was spent on the property; that up until June, 1940, when he visited the claims, he would drag road, remove boulders, and work the various claims sometimes for a "day or so" and "sometimes several days"; that about 200 tons of ore was removed between July 1, 1939, and June 30, 1940. Another witness corroborated his testimony.

It is now argued by appellants that the title and right of possession of the plaintiff corporation, if it had any, was terminated by the relocation of defendants on July 1, 1940, by reason of the failure of plaintiff corporation to perform sufficient labor to comply with section 2314 of the Public Resources Code. We see no merit to this argument. Where claims are held in common, the locators or owners have the right, as a matter of law, to do the necessary annual assessment work on any one of the claims so held, provided the work is done in good faith for the benefit of all the claims and has the tendency to benefit or develop the claims other than the one on which the work is actually performed.

Whether the work was done in good faith for the purpose of working the claim in controversy and had a tendency to benefit or develop such claim, is a question of fact upon

which the decision of the court will not be disturbed if there is any evidence to support it. (*DeNoon* v. *Morrison,* 83 Cal. 163 [23 P. 374].) It was likewise held in that case that the party making annual expenditure upon one of such claims held in common is not required to prove the location and record title of the claim upon which the work was done, if the title to such claim is not in dispute; that it is sufficient to prove actual possession and improvement of such claim, from which the law presumes ownership. (See, also, 17 Cal. Jur. p. 304, sec. 18.) In this case, the evidence merely creates a conflict which the trial court determined in favor of the plaintiff. Under the accepted rules, we are unable to disturb the finding. (*Chichester* v. *Seymour,* 28 Cal.App.2d 696 [83 P.2d 301].) The burden of proof is on the relocator to show that the original locators had not performed the required assessment work. Furthermore, as in this case, where the original locators have filed an affidavit of having complied with the requirements as to assessment work, the affidavit makes a prima facie showing of such in favor of the original locators. (*Musser* v. *Fitting,* 26 Cal.App. 746 [148 P. 536].)

 The second contention is that there was no evidence that the lease under which plaintiff claims possession was executed by any of the original locators of the mining claim. In this action, such objection is unavailable. It is clear that the plaintiff corporation acquired its right of possession under the lease as executed and was put in possession of the property; and that it had not abandoned the lease or contract of purchase. It is not shown by the evidence that the corporation was in default under its contract of purchase. Furthermore, defendants must have had knowledge that the corporation was in possession of the claims and that the assessment work had been done when they endeavored to relocate them. Under these circumstances, defendants claimed right of possession cannot prevail over plaintiffs.

 In ejectment proceedings the matter paramount in litigation is the alleged right to the possession of the demanded premises on the part of the plaintiff and his ouster by defendants, and not the title to the land. (*Porter* v. *Garrissino,* 51 Cal. 559; *Barcroft* v. *Livacich,* 35 Cal.App. 2d 710 [96 P.2d 951].) It was held in *Richardson* v. *McNulty,* 24 Cal. 339, that where prior possession is relied on

by the plaintiff, that the defendant cannot justify his entry by showing the true title outstanding. (See, also, *Neuebaumer* v. *Woodman*, 89 Cal. 310 [26 P. 900].) The second contention here claimed by defendants is equally untenable.

The third question involves the claimed error on the part of the trial court in refusing to receive in evidence a certain letter claimed to be a notice of default and termination of the lease under which the plaintiff claims. From the record it appears that Milovich testified that he owned a 20 per cent interest in the claims, which interest he bought from Rossi in 1938; that he visited the claims during the years 1939 and 1940, and that in June, 1940, Beal told him that "all assessment work is done and filed for this year"; that he went to the property and could not "find anything done"; that he had an attorney who represented him and also Mr. Wade write a letter containing some form of notice to "turn the contract to us on account of" some claimed default. The record does not contain a copy of the letter nor does it show that the attorney was authorized to represent the other lessors in sending such a notice. Regardless of the contents of the letter and the claimed default, it admittedly was not signed by the other lessees or anyone authorized to act in their behalf. It has been repeatedly held that a notice of forfeiture of a lease is ineffectual where given by a tenant in common and not joined in by his cotenants nor ratified by them. (*Axis Petroleum Co.* v. *Taylor*, 42 Cal.App. 2d 389 [108 P.2d 978]; *Metzler & Co.* v. *Stevenson*, 217 Cal. 236 [18 P.2d 330]; *Beam* v. *Dugan*, 132 Cal.App. 546 [23 P.2d 58].)

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.