UNITED STATES, Appellee

v.

VERNON G. POWELL, Private E–1, U. S. Army, Appellant

3 USCMA 64, 11 CMR 64

No. 1450

Decided July 17, 1953

LT COL George M. Thorpe, U. S. Army, and 1ST LT Ronald C. Meteiver, U. S. Army, for Appellant.

LT COL Thayer Chapman, U. S. Army, and 1ST LT Robert A. Forman, U. S. Army, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Petitioner was convicted by a general court-martial of desertion with intent to remain away permanently, in violation of Article 85, Uniform Code of Military Justice, 50 USC § 679. He was sentenced to a dishonorable discharge, total forfeitures, and confinement for three years. The convening authority approved the findings, and sentence, and the board of review affirmed without opinion.

The facts in this case are relatively simple. At the trial the accused pleaded guilty to absence without leave from February 2, 1952, until March 26, 1952, but not guilty of an intent to remain away permanently. At the inception of the absence he was stationed at Fort Riley, Kansas. He was apprehended at Pekin, Illinois, his legal residence, at which time he was dressed in civilian attire. The court took judicial notice of the fact that Pekin, Illinois, is 533 miles from Fort Riley, and 99 miles from Chanute Air Force Base, Illinois. Prior to findings, trial counsel, over the objection of defense, introduced into evidence two exhibits which were extracts from accused's service record and which showed seven previous convictions for absence without leave, and a compilation of time lost under Article of War 107, 10 USC § 1579. At the time they were offered, trial counsel stated their purpose was to show a prior course of conduct on the part of the accused which could be considered by the court in determining the intent with which he went or remained absent. The seven convictions can be identified by reference to the tabulation which is hereinafter set forth:

| From | To (inclusive) | Days | Reason |
| --- | --- | --- | --- |
| 13 Mar 49 | 13 Mar 49 | 1 | AWOL |
| 2 May 49 | 6 Jun 49 | 36 | AWOL |
| 9 Jun 49 | 11 Sep 49 | 95 | Conf. |
| 1 Nov 49 | 7 Nov 49 | 7 | AWOL |
| 31 Dec 49 | 14 Mar 50 | 74 | AWOL |
| 15 Mar 50 | 23 May 50 | 70 | Conf. |
| 31 May 50 | 27 Jun 50 | 28 | AWOL |
| 28 Jun 50 | 1 Oct 50 | 96 | Conf. |
| 9 Oct 50 | 24 Oct 50 | 14 | AWOL |
| 25 Oct 50 | 9 Dec 50 | 46 | Conf. |
| 11 Dec 50 | 9 Jan 51 | 30 | AWOL |
| 26 Jan 51 | 27 Mar 51 | 51 | Conf. |
| 5 May 51 | 28 May 51 | 24 | AWOL |
| 29 May 51 | 10 Jun 51 | 13 | Conf. |
| 22 Jun 51 | 20 Aug 51 | 60 | Conf. |
| 4 Sep 51 | 27 Sep 51 | 24 | AWOL |
| 28 Sep 51 | 27 Jan 52 | 122 | Conf. |
| 2 Feb 52 | 26 Mar 52 | 53 | AWOL |

We granted accused's petition to review his conviction. To support his petition, a number of errors have been argued but the only one of importance is that the exhibits were incompetent because evidence that he has committed the particular offenses is not admissible as tending to prove his guilt. This contention breaks down into several parts which we will proceed to discuss.

The Manual for Courts-Martial, United States, 1951, paragraph 138(g), lays down the general rule as to when evidence of other offenses or acts of misconduct is admissible. It states there:

"The general rule is that evidence that the accused has committed other offenses or acts of misconduct is not admissible as tending to prove his guilt, for ordinarily such evidence would be useful only for the purpose of raising an inference that the accused has a disposition to do acts of the kind committed or criminal acts in general and, if the disposition thus inferred was to be made the basis for an inference that he did the act charged, the rule forbidding the drawing of an inference of guilt from evidence of the bad moral character of the accused would apply. However, if evidence of other offenses or acts of misconduct of the accused has substantial value as tending to prove something other than a fact to be inferred from the disposition of the accused, the reason for excluding the evidence is not applicable. Consequently, evidence of other offenses or acts of misconduct of the accused is admissible in the following circumstances:

• • • • • •

"(3) When it tends to prove guilty knowledge or intent, if guilty knowledge or intent is an element of the offense charged.

. . . . . .

"(4) When it tends to prove motive."

Appellant concedes this general rule, but he contends the reasons for a soldier going absent without leave are many and varied, and, therefore, are in no way probative of the intent of the accused. To a certain extent that may be true, but there comes a time when their length and frequency show clearly an intent to abandon the service. Therefore, dealing firstly with the exhibit showing previous convictions, the problem which concerns us is whether it contains evidence from which that mental attitude can be inferred; because, unless it does, the potentialities of harm to the accused from a showing of general criminal tendencies outweigh the necessities of shedding light on intent by that method. A decision on that question requires an evaluation of the evidence for its probative effect.

Before discussing the evidence, we dispose of one preliminary question and that is the law officer very carefully instructed the court-martial at the time the exhibits were offered in evidence, and in his final instruction, that the evidence was admitted only for the limited purpose of showing intent. He first stated:

". . . The court is instructed that in admitting this exhibit, the law officer is admitting it not for the purpose of showing the bad character of the accused, but only for the purpose of showing the course of conduct which may be considered by the court in determining whether or not the accused has the requisite intent to commit the offense charged in the specification. The court will not consider the evidence of previous convictions as tending to prove any other fact. The exhibit will be admitted."

When instructing the court on the merits he developed the subject more fully by stating:

"Certain evidence has been admitted in the trial of this case which is contrary to the general rule. The general rule is that evidence that the accused committed other offenses or acts of misconduct is not admissible as tending to prove his guilt. For ordinarily such evidence would be useful only for the purpose of raising inferences that the accused has a disposition to do acts of the kind committed or criminal acts in general and if the disposition to be inferred is to be made a basis of inferences that he did the act charged, the rule forbidding the drawing of an inference of guilt from evidence of bad moral character to accused would apply. However, if evidence of other offenses or acts of misconduct of the accused has substantial value as tending to prove something other than the fact to be inferred from the disposition of the accused, the reason for excluding the evidence is not applicable. Consequently the law officer has admitted two of the prosecution's exhibits for the purpose of showing some evidence of the intent of the accused which is the essential element in this case."

The record discloses the accused pleaded guilty to the offense of absence without leave and so the only issue remaining was whether the absence was with a specific intent of remaining away permanently. Bearing on that issue, aside from the previous convictions, is a 53-day unexplained absence terminated by apprehension in civilian clothes, at a place considerably removed from accused's place of duty. These facts are sufficient to establish a prima facie case of desertion, but they leave something to be desired in the way of establishing the specific intent with which the accused left, or remained absent, and trial counsel sought to strengthen that element by introducing the questioned exhibit. It should be plain from this recitation of facts that by so doing the prosecution did not offend against the principle of law which holds that this type of evidence should not be used when there is other compelling evidence of intent.

The question, difficult of solution, centers around the contention made by the accused that repeated ██ absences without leave do not show an intent to remain away permanently; rather, they show only an intent to be a recidivist absentee. If that contention is sound, then the documents showing the previous convictions were inadmissible. We believe that by viewing the convictions in the light of other attendant facts and circumstances, which we will point out as we develop the issue, the similarity between those offenses and the one in issue is sufficient to meet the common sense test and shows that they do have a direct bearing on an intent not to return. In this connection, we first call attention to the fact that it is not essential that the offenses be identical, they need be only similar. Wigmore, Evidence, 3d ed, § 302, states the general rule and the hesitancy on the part of some courts to admit this evidence even though it has probative value. He states:

"Yet, in order to satisfy this demand, it is at least necessary that prior acts should be *similar*. Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance. . . .

"It is just this requirement of similarity which leaves so much room for difference of opinion and accounts for the bewildering variances of rulings in the different jurisdictions and even in the same jurisdiction and in cases of the same offence. Some judges incline to treat the judicial test of probative value as identical with the common-sense test, and to admit such instances as bear a similarity liberally interpreted by the standard of every-day reasoning. Other judges set their faces firmly against every instance which is not on all fours with the offence in issue, regardless of the consideration that justice consists quite as much in protecting the public against evil doers as in showing mercy to those whose guilt has been more or less skilfully concealed. It is hopeless to attempt to reconcile the precedents under the various heads; for too much depends on the tendency of the Court in dealing with a flexible principle. One Court will be certain to exclude everything that is not too clearly probative for even technical quibblers to oppose, and sometimes will exclude even that. Another Court will accept whatever has real probative value. Something, however, may perhaps be gained by realizing, as to the former, that it is not the law, nor precedent, nor principle, nor policy, that will account for such rulings, but merely a rooted inclination to take the stricter view and a preference to err in favor of defendants and against innocent victims."

If we first assume that each previous absence without leave was terminated by voluntary return to the service, then an intent not to remain away permanently might be inferred. If, on the other hand, we assume each was terminated by apprehension, then the contrary intent is rather clearly established. In this instance we find ourselves between those two extremes. The Government did not prove the method of return to the service and the accused presented no evidence. The net result is that the method of returning to military control in all seven instances remains undisclosed. However, when dealing with those previous convictions, we are not considering an accused who is shrouded by a presumption of innocence. That presumption disappeared after each conviction and the findings of guilt on each is presumed to be founded on substantial evidence. We may, therefore, accept those convictions without regard to any presumption, in fact or in law, in favor of the accused. A conviction, in a general sense, means a finding that the accused is guilty of the offense as alleged and in the seven instances with which we are concerned the specifications could have alleged that termination was by apprehension. While that might be considered as the most serious aspect of the offenses, unlike desertion, the severity of sentence is in no way dependent on the manner of return and a failure to allege or establish that item is of no importance to the finding or sentence. Therefore,

68

there does not appear to be any persuasive reason why we should not take the view that after conviction an accused, if he seeks to sustain a contention that the offense of which he was convicted was not established in its most serious aspect, must produce some evidence to the contrary. If that principle is accepted, the previous convictions would point unerringly to an intent to abandon the service. However, in this instance, we need not go that far; all we need do is to consider the convictions uninfluenced by a presumption in favor of either method of return. If unlimited in that manner, we believe they point toward a specific intent not to return and were admissible.

The accused was inducted into the military service on January 6, 1949, and his first 66 days appear without incident. The first venture along the path of absenteeism was short as it lasted only one day. However, on May 2, 1949, his apparent objective started to take form. On that date he left and remained absent for 36 days. He was returned to military control on June 6, 1949, and three days thereafter he was confined. He remained in confinement until September 11, 1949, and after having stayed within the law for approximately 50 days, he again departed. This absence commenced on November 1, 1949, and ended on the 8th day of that month. He escaped punishment for that absence but on December 31, 1949, he absented himself for a period of 74 days. His status went from absence without leave to confinement on his return and the latter status lasted for 70 days, ending on May 23, 1950. After 8 days with his unit, accused again departed to be gone for 28 days. This period of absence was followed by a period of confinement for 96 days which ended on October 1, 1950. Again on his 8th day of freedom he sought the comforts of civilian life but after 14 days he again reverted to military control. This control was assured for 46 days by confinement but 2 days after his release he was gone again for a period of 30 days. Incarceration for 51 days seems to have caused him to tarry a little longer before leaving as he remained with the service slightly more than a month before he decided on another try at civilian life. This lasted for 24 days and resulted in confinement for 73 days. Within two weeks after serving his confinement the accused absented himself for 24 more days which was followed by incarceration for 122 days. That period ended on January 27, 1952, and on the 5th day thereafter the accused commenced the absence of 53 days for which he is now being prosecuted.

A history such as that does not tend to portray a man who has a desire to serve his country but who yields to various improper and irregular influences away temporarily. Neither does it disclose a person who through occasional lapses of responsibility fails or neglects to return to his station at the appointed time. That record pictures a man who refuses to remain with the service except when he is in confinement or under some other form of restraint—a rather defiant attitude of "I will not serve voluntarily." In a period of nearly three years (approximately 1000 days), the accused has been carried on the rolls as on duty for not to exceed 262 days. He was apprehended in this case on May 26, 1952, and if we take the last two years of his service, we find his record to be more persuasive on his intent to remain away permanently. During those 730 days, he was absent without leave or in confinement a total of 625 days. Moreover, the periods between releases from confinement and absences during those two years are informative. They were 8 days, 8 days, 2 days, 17 days, 39 days, 12 days, 14 days, and 5 days, respectively—rather compelling evidence that he was seeking to avoid any and all forms of military duty. Moreover, the periods of absence do not disclose merely overstaying a weekend pass, or going home for short periods of time to take care of emergencies; for the most part, they are rather substantial and totally unexplained periods of absence which bespeak permanency. In a chronological order they were for periods of 1 day, 36 days, 7 days, 74 days, 28 days, 14 days, 30 days, 24 days, 24 days, and 53 days.

It appears to us that, without knowing whether the accused returned voluntarily or involuntarily, the probative effect of that evidence was to establish an intent to remain away from the service permanently. Either the accused intended to remain away temporarily or permanently. As between those two, the record compels a belief that he intended the latter. The time he spent at his station was accounted for largely on an involuntary retention basis and he appears to have departed as soon as freedom of movement permitted. The probability that one who shows such an utter distaste for military service would be continually leaving with intent to return voluntarily is unlikely. His pattern suggests a return only under compulsion. If serving 553 days confinement during a three-year period would not deter his going from his station in this particular instance, it is unlikely that his mental attitude would be such that he would give thought to returning. Clearly the reasonable inference from this evidence is to the effect that the accused intended to remain away permanently.

The exhibit showing time lost under Article of War 107 (republished with minor amendments as Section 6, part (a), Uniform Code of Military Justice), likewise bears on intent in that it shows the short intervals of time between the releases from confinement and the next ensuing absences. Without it the court would be required to speculate as to whether the periods of confinement were, in fact, served. That exhibit furnishes one of the necessary links in the chain of circumstances which show an intent to leave the service at the first reasonable opportunity. Further, it establishes that the individual offenses were not so remote or disconnected that they did not form part of an over-all plan to avoid service by remaining away permanently. Moreover, the Manual prescribes that evidence may be admitted if it has a tendency to establish a motive for the crime even though it may connect the accused with other crimes. Certainly, time lost under Article of War 107, supra, would furnish a motive for the accused to remain away permanently. That Article provides:

"*Soldiers to Make Good Time Lost.* —Every soldier who in an existing or subsequent enlistment deserts the service of the United States, or without proper authority absents himself from his organization, station, or duty for more than one day, or who is confined for more than one day under sentence, or while awaiting trial and disposition of his case, if the trial results in conviction, or through the intemperate use of drugs or alcoholic liquor, or through disease or injury the result of his own misconduct, renders himself unable for more than one day to perform duty, shall be liable to serve, after his return to a full-duty status, for such period as shall, with the time he may have served prior to such desertion, unauthorized absence, confinement or inability to perform duty, amount to the full term of that part of his enlistment period which he is required to serve with his organization before being furloughed to the Army reserve."

As applied to this particular case the accused, before committing the instant offense, had some two and one-half years time which he was required to make good. This would mean that his period of enlistment would be extended by that length of time. If his behavior pattern remained the same, his distaste for military service would cause him to avoid that service by remaining away permanently. At the least, the evidence was sufficiently probative to justify the law officer in admitting it in evidence.

In announcing our views on the admissibility of these exhibits, we do not intend to suggest that in every instance when an accused has been previously convicted of absence without leave, that his conviction may be offered in evidence as bearing on an intent to desert. Law officers should exercise discretion in determining their admissibility. In the event they do not shed light clearly on the accused's mental attitude, they should be rejected. In addition, in those instances where they are received in evidence, it would be

70

helpful to know whether the accused voluntarily returned to the service or, figuratively, was brought back in irons.

The accused has raised other errors such as: (1) the exhibits show evidence of bad character and this renders them inadmissible because the accused did not first put his character in issue; and, (2) they are hearsay. The short answer to the first contention is that if the evidence is admissible to establish intent, the fact that it shows undesirable traits of character does not close the door to its admission. Necessarily, all evidence introduced by the Government has a tendency to place an accused in an unfavorable light but it cannot be excluded for that reason. If there is a legitimate ground for its admission, its effect does not make it incompetent. The answer to the second contention is found in many of our decided cases. Extract copies of service records, even though hearsay, are admitted as exceptions to that rule under well established principles of military law.

Other errors assigned by the accused have been disposed of by our holding on the first issue or are not considered to be of sufficient importance to require discussion.

The decision of the board of review is affirmed.

Chief Judge QUINN concurs in the result.

BROSMAN, Judge (concurring in the result):

I concur most heartily in the result. However, it seems to me that the author of the principal opinion works somewhat too hard to reach the conclusion in which we all agree. It is from much of the argumentative product of those excess labors that I wish to dissociate myself. Particularly am I unsympathetic toward any slightest suggestion that a presumption of apprehension obtains in these premises. Likewise, I am unfriendly toward any scent of the notion that—in the nature of things, by the law of averages, or what you will—at least some of the accused's prior absences "must have been" terminated by apprehension.

To me the problem before us here is not really a difficult one. We are dealing with a question of admissibility only. Desertion and absence without leave are certainly similar offenses. There are shown against the accused seven previous convictions of absence without leave of varying periods as bearing on the presence of an intent to remain away from his organization permanently. Unauthorized absences in this substantial number—uncharacterized as to method of termination by either Government or defense—to my mind simply *do* bear in some degree on the accused's intent. Moreover, they bear on this element with sufficient—perhaps barely sufficient—force to overweigh countervailing auxiliary policy considerations. Hence, admitting them for the court-martial's consideration does not constitute error. Certainly the evidential weight to be attached to them is a matter for the determination of the triers of fact.