UNITED STATES, Appellee

v.

GEORGE F. DELLER, Private, U. S. Army, Appellant

3 USCMA 409, 12 CMR 165

No. 1859
Decided September 25, 1953

LT COL George E. Mickel, U. S. Army, LT COL Edgar R. Minnich, U. S. Army, LT COL George M. Thorpe, U. S. Army, and 1ST LT Justin L. Vigdor, U. S. Army, for Appellant.

COL Allan R. Browne, U. S. Army, LT COL Thayer Chapman, U. S. Army, LT COL William R. Ward, U. S. Army, and CAPT Irvin M. Kent, U. S. Army, for Appellee.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Insofar as pertinent to the problem before us in this case, it may be stated that a general court-martial, convened at Fort Riley, Kansas, has convicted the accused, Deller, of what has been designated frequently and colloquially as "absence without leave with intent to avoid basic training"—this in violation of the Uniform Code of Military Justice, Article 134, 50 USC § 728. Following approval by the convening authority, and affirmance by a board of review in the office of The Judge Advocate General, United States Army, this Court granted accused's petition for further review with respect to two issues:

"1. Whether the specification of Charge II [that alleging the absence without leave described above] alleges any offense in violation of Article 134.

"2. Whether Prosecution Exhibits 3 and 4 were admissible in evidence."

### II

The challenged specification alleged that the accused, Deller, did:

". . . on or about 7 April 1952, without proper authority and with the wrongful intent of permanently preventing completion of his basic training and useful service as a soldier, absent himself from his unit . . . and did remain so absent until on or about 30 April 1952."

In substance, appellate defense counsel have urged that no such offense as that alleged is cognizable under Article 134, and that such a crime is unknown to military law. On the other hand, Government counsel argue that, however novel, no bar exists to the recognition and punishment of an aggravated absence without leave of this character as a violation of Article 134. The issue to be resolved is clear—and its importance at the present time can hardly be overemphasized.

Scrutinized more carefully, the argument of the Government is bipartite in nature: In the first place, it is said that the conduct of the accused may be regarded as a disorder or neglect to the prejudice of good order and discipline, and dealt with under the proscription of the first of the three categories of Article 134, *supra*. As a second position, it is argued that, in any event, the specification alleges a crime or offense "not capital," within the meaning of the third division of the same Article—this in that the accused's misconduct constituted a violation of § 12a of the Universal Military Training and Service Act, 62 Stat 605, 622, 50 USC App, Supp V, § 462. Whether this latter statute may be the subject of proper application to the facts of this case presents a problem replete with difficulty in the area of statutory construction as well as in that of policy. However, the course we have chosen to follow renders consideration of this specific question unnecessary.

### III

Because of the nature of this course, too, we shall—somewhat unusually—inquire at the outset whether the accused here might properly have been charged with desertion with intent to shirk important service, in violation of Article 85(a)(2) of the Uniform Code, *supra*, 50 USC § 679. Or, to put the question more precisely, whether—had he been so charged—we would have been willing to uphold a conviction of guilt on the basis of the facts established at this trial.

In essence, the offense of desertion with intent to shirk important service consists of only two elements: (1) an absence without leave of a specified duration, (2) characterized by a pur-

**411**

pose to avoid, through absence, service which, as a matter of law, may properly be regarded as "important." Manual for Courts-Martial, United States, 1951, paragraph 164a. See United States v. Bondar, 2 USCMA 357, 8 CMR 157, decided March 26, 1953; United States v. Apple, 2 USCMA 592, 10 CMR 90, decided June 1, 1953. Manifestly the trial court here found (1) that the accused had absented himself without leave as alleged, and (2) that his purpose or object in doing so was permanently to prevent "completion of his basic training and useful service as a soldier." We are in no way disposed to question the sufficiency of the evidence to support these findings of fact. On the basis of them, therefore, there can be no doubt that the quitting—that is the unauthorized absence—aspect of the offense under consideration has been satisfied. Neither can there be doubt at this level that the aim of the accused in thus absenting himself was to avoid the completion of basic training. Consequently, the only remaining question is one of law, and has to do with whether participation in the procedures of basic training constitutes an instance of "important service."

In a large sense—and especially during a period of emergency—all military duty is important—that is, ▆▆▆▆▆▆ ▆ its performance constitutes service which is crucial to the national well-being—perhaps even to its survival. Clearly, however, all service is not "important" within the meaning of Article 85(a)(2), *supra*, else no necessity for the proscription of the crime with which we are concerned at this stage of the discussion would have arisen. Some basis for distinguishing important service from what has been called "ordinary" service must be found to exist. Some critical quality attributable to duty of a certain sort must be present to justify its characterization as "important," as that term is used in the desertion Article of the Code. May that quality be attributed properly to the duty under scrutiny here? Is basic training sufficiently differentiated in kind from other aspects of military duty so as to render appropriate its denomination as important service?

Until recently, we are sure, we would have entertained few doubts in the matter, and with little hesitation would have responded firmly in the negative. The Manual, *supra*, and its predecessors, we believe, would have required a reply in this vein, and so would the numerous service cases dealing with the question. However, in June 1951, certain Congressional action was taken which—it is suggested—bears directly on the problem before us. Universal Military Training and Service Act, *supra*, § 4(a), as amended, 65 Stat 78, 50 USC App Supp V, § 454(a). Here the following legislative language was used:

"Every person inducted into the Armed Forces pursuant to the authority of this subsection after the date of enactment of the 1951 Amendments to the Universal Military Training and Service Act [June 19, 1951] shall, following his induction, be given full and adequate military training for service in the armed force into which he is inducted for a period of not less than four months, and no such person shall, during this four months' period, be assigned for duty at any installation located on land outside the United States, its Territories and possessions (including the Canal Zone); and no other member of the Armed Forces of the United States who is enlisted, inducted, appointed, or ordered to active duty after the date of enactment of the 1951 Amendments to the Universal Military Training and Service Act [June 19, 1951] shall be assigned to duty at any installation located on land outside the United States, its Territories and possessions (including the Canal Zone), until he has had the equivalent of at least four months of basic training . . . ."

The effect of this language, of course, is to prohibit the assignment of military personnel to foreign duty—that is, to service outside the continental limits of the United States—until after the completion of four months of basic military training. Since legislation must not be torn from the factual context in which

it was considered, this means that at the present time a *soldier* may not be used for the ultimate purpose for which he exists—that is, participation in combat—until the completion of basic training. Training is thus given a legal position it has not heretofore occupied, and basic training has become basic in a juristic as well as a practical sense. Thus, too, training of this character has been sharply differentiated as a matter of law from other sorts of the same exercise. It is not now unlawful, for example, to transport to the Far East Command a cook who has not attended cooks and bakers school, nor communications personnel who have received no formal instruction in their military occupational specialty. Yet it is unlawful to treat similarly any soldier who has not completed four full months of basic training. Thus we conclude that basic training is now important service within the meaning of Article 85, *supra*, the desertion Article. It follows that, had the accused in this case been charged with desertion with intent to shirk important service, we would have been entirely willing to uphold his conviction thereof on the basis of the evidence adduced at this trial.

However, he was not so charged. Instead, it was alleged that he absented himself without leave "with the wrongful intention of permanently preventing completion of his basic training and useful service as a soldier." We are asked whether a specification based on this language "alleges any offense in violation of Article 134." This question need not detain us long—it was answered squarely in the negative by our recent decision in United States v. Johnson, 3 USCMA 174, 11 CMR 174, decided July 31, 1953. There, for reasons which were carefully assigned and fully elaborated, we announced that offenses sounding in unauthorized absence may be reached and penalized only under the provisions of Articles 85, 86, and 87 of the Code, *supra*, 50 USC §§ 679, 680, 681, proscribing, respectively, desertion, absence without leave, and missing movement. With a single exception not relevant here, there are simply no offenses of an unauthorized absence type cognizable under Article 134. In this connection, see also United States v. Norris, 2 USCMA 236, 8 CMR 36, decided February 27, 1953; United States v. Haywood, 2 USCMA 376, 9 CMR 6, decided April 14, 1953.

## IV

However, this response does not dispose finally of the substance of the first question. Beneath its surface lies yet another—that is, whether any offense at all under the Uniform Code is charged through the allegations of the specification of Charge II. We shall now address ourselves to this inquiry—more narrowly to that of whether the language of the charge sheet here did not in law allege, and the evidence adduced at the trial in fact establish guilt of, desertion with intent to shirk important service, in violation of Article 85(a)(2).

The offense alleged at the trial of any case depends, not primarily upon the particular statute under which it is laid, but rather on the facts which are alleged. This is true despite the perfectly sound assertion that in unusual cases a statutory reference may be necessary to a proper understanding of the charge. Martin v. United States, 99 F2d 236, 238 (CA 10th Cir). In United States v. Hutcheson, 312 US 219, 229, 85 L ed 788, 791, 61 S Ct 463, the Supreme Court said: "[D]esignation by the pleader of the statute under which he purported to lay the charge is *immaterial*." (Emphasis supplied). Even a reference to *the wrong statute* is of no consequence, if the allegations properly and fairly operate to apprise the accused in fact of the nature of the offense alleged against him. United States v. Kolodny, 149 F2d 210, 211 (CA 2d Cir). To the same effect is the Manual, *supra*, which states specifically in paragraph 27 that: "Neither the designation of a wrong article nor the failure to designate any article is ordinarily material, provided the specification alleges an offense of which courts-martial have jurisdiction." See also United States v. Johnson, *supra*. Thus with complete propriety we may lay aside the phenomenon that the ac-

cused was charged with a violation of Article 134.

Examining the factual content of the specification, we observe that it was alleged in substance that █ the accused absented himself for a specified period without leave and with an intent permanently to avoid the completion of basic training. We have already noted that the crime of desertion concerned here, as proscribed in Article 85(a)(2), consists of two—and only two—elements: (1) an unauthorized absence, (2) accompanied by an intent to shirk through such absence that which as a matter of law amounts to important service. Finally, we have seen that today basic training constitutes important service within the meaning of Article 85(a)(2). It follows that, in terms of factual allegation, the specification of Charge II states no more and no less than a case of desertion with intent to shirk important service.

Turning now to the findings, it is inescapable that the members of the court-martial found that █ the accused did absent himself without leave for the period alleged, and that his purpose or aim in doing so was to prevent, through this unauthorized absence, the completion of his basic training. That is to say, that he absented himself unlawfully with intent to shirk what we have held to be important service. We have no disposition whatever to challenge these findings; in other words, we believe them to have been based on sufficient evidence. Thus in terms of the court-martial's legally supported findings, as well as in those of the accuser's specific allegations, a case of desertion with intent to shirk important service, in violation of Article 85(a)(2), is made out. Indeed, there is no mystic property in the precise phrasing of this Article requiring that it be used or no offense thereunder may lawfully be found. Desertion is desertion by whatever name described if its factual ingredients are specified on the charge sheet. Moreover, desertion is desertion by whatever name described if, having been properly alleged, its elements are found on legal evidence by a court-martial properly instructed thereon. They were so specified and they were so found here. The touchstone lies in the *facts* alleged and found. We cannot see how the accused could have been misled by the language of the specification used here. In terms of fact, he knew full well what was charged against him. That his counsel was deprived of an opportunity at the trial to argue the purely legal question of whether the service with which we are concerned constituted important service is regarded by us as without significance. In sum, the conviction can be, and it is, affirmed as one of desertion with intent to shirk important service, in violation of Article 85(a)(2) of the Uniform Code, *supra.*

## V

The second issue challenges the admissibility in evidence of Prosecution Exhibits 3 and 4. Exhibit █ 3 consists of a record of convictions reflecting that the accused had been previously convicted of seven distinct and separate absences without leave—all offenses having been committed during a period beginning January 11, 1951, and ending March 21, 1952. It is axiomatic that evidence of guilt of other offenses is not generally admissible to establish guilt of the specific crime charged. United States v. Vincent C. Jones, 2 USCMA 80, 6 CMR 80, decided December 17, 1952. However, to this broad rule an exception is taken to the effect that evidence of prior offenses may be admitted for limited purposes—"generally restricted to establishing knowledge, intent, or design of the accused." *Ibid.* The law officer here admitted Exhibit 3, expressly limiting its use to its tendency to illuminate the intent of the accused—and appropriately cautioned members of the court to this end. There was, accordingly, no error in the admission in evidence of Exhibit 3. That its contents were relevant to the issue of intent is so obvious as to require no demonstration. See United States v. Powell, 3 USCMA 64, 11 CMR 64, decided July 17, 1953.

## VI

Prosecution Exhibit 4 consists of a

414

"record of time lost," prepared in response to 64 Stat 145, 10 USC § 629, which provides, in substance, that periods of unauthorized absence or confinement are not to be considered as terms of duty in computing time served during an enlistment. At this point we may observe parenthetically that there is no necessity here for deciding whether this statute has application to personnel inducted through Selective Service, since the accused in the case at bar was serving under a three-year enlistment contracted on November 9, 1950. Without entering into unnecessary detail, suffice it to say that Exhibit 4 constitutes a chronological report of (1) the unauthorized absences of the accused, and (2) the periods spent by him in confinement as a result thereof. It is signed and certified by a warrant officer, whose signature was preceded by a statement that he is the official custodian of the accused's service record; that the entries reported by him are true copies of appropriate service record entries relating to "time lost" by the accused; and that he had personally verified all the entries.

We entertain no doubt that enlistment time "lost" through unauthorized absence and confinement therefor are items which are irrelevant in the usual prosecution for absence without leave and in most desertion cases. Naturally, the duration of an absence is important —directly or indirectly—in determining the sentence to be imposed. However, the information contained in Exhibit 4 was introduced, not for the purpose of arriving at the maximum sentence applicable, but instead for its bearing on the intent element of the crime here charged. Therefore, the provisions of 10 USC § 629, as such, are of no moment in this context. However, our approach at this point should be: (1) whether the matters sought to be proved were proper subjects of proof in a case of this nature, and (2) if so, whether they were competently proved by Exhibit 4.

There can be no doubt—as suggested in a preceding section of this opinion— that the prior periods of unauthorized absence on the part of the accused were distinctly relevant to any determination of the character of his intent in the offense with which he was charged. We are sure that the same must be said of the periods spent in confinement. It is manifest that such periods were not spent in training, and, accordingly, as in the case of the absences themselves, they become relevant where avoidance of training is a vital element in the offense charged. The problem then becomes one of whether Exhibit 4 is competent evidence of the matters to establish which it was introduced. Of course, the original service record of the accused would have been the "best evidence" of those portions of its contents bearing on unauthorized absences and periods of confinement. And—just as clearly—verbatim extract copies of its appropriate entries would have been entirely competent. United States v. Masusock, 1 USCMA 32, 1 CMR 32, decided November 9, 1951. Exhibit 4, however, is not a verbatim extract copy. Instead, it is a *summary* of applicable service record entries. This distinction can not be held fatal to its competence. The warrant officer who certified the Exhibit could—as custodian of the accused's service record—have taken the stand and could have testified orally in the same manner and to the same matter as that set out in the Exhibit. Under the circumstances of this case, it was, to our minds, competent "secondary evidence" of the relevant portions of the service record. It is to be noted that, although defense counsel objected to the receipt of the Exhibit in evidence, he did so on the asserted basis of immateriality. The Manual specifically requires an objection to "secondary evidence" *as such*. Otherwise the objection is waived. Manual, *supra*, paragraph 143a(1). The taint—such as it is—arising from the "secondary" character of Exhibit 4 was waived by the failure of defense counsel to object specifically thereto.

In accordance with the foregoing views, the first question is answered in the negative and the second in the affirmative. However, because of our position as expressed in Part IV of this opinion, the decision of the board

**415**

of review is affirmed as modified therein.

Chief Judge QUINN and Judge LATIMER concur.