UNITED STATES, Appellee

v.

RALPH B. GRAHAM, Fireman Apprentice,
U. S. Navy, Appellant

5 USCMA 265, 17 CMR 265

No. 4905

Decided December 10, 1954

CDR William T. Roddy, USN, and LCDR Franklin P. Gould, USNR, for Appellant.

CDR Thomas E. Blade, USN, and CDR G. H. Rood, USN, for Appellee.

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

A divided board of review affirmed the accused's conviction for desertion with the intent to remain away permanently, in violation of Article 85, Uniform Code of Military Justice, 50 USC § 679. We granted review to determine whether the accused was prejudiced by the admission of certain evidence intended to show his intent.

Six extracts of entries in the accused's service record constitute the prosecution's direct case. Three of these, admitted in evidence without objection, show that at 5:00 a.m. on May 13, 1953, the accused failed to return from liberty; he was declared a deserter on June 13, 1953; and he remained absent without authority until apprehended on July 21, 1953, by Federal Bureau of Investigation agents. The remaining four documents were offered in evidence by trial counsel for the purpose of showing the accused's "intent to leave the service." Defense counsel objected on the ground that they were not related to the offense charged and tended to show only general bad moral character, which was not in issue. The law officer sustained the objection to an extract purporting to show nonjudicial punishment for an unauthorized absence of twenty-two hours in January 1952. However, he admitted the others.

From the contested exhibits, it ap-

266

pears that, on December 11, 1952, the accused was convicted by a general court-martial for three offenses against the Uniform Code of Military Justice. These were an unauthorized absence from his ship from May 13, 1952, to July 30, 1952; a breach of arrest on August 7, 1952, at the U. S. Naval Receiving Station, Norfolk, Virginia; and a second unauthorized absence from the latter station from August 7, 1952, to September 21, 1952. The sentence imposed by the court was confinement at hard labor for six months, reduction in grade, and partial forfeitures. On December 30, 1952, competent authority approved the sentence and ordered it executed. The U. S. Naval Retraining Command, Norfolk, Virginia, was designated as the place of confinement. A service record entry by the Retraining Command indicates that the accused was in that unit on May 11, 1953.

At the time of his objection, defense counsel produced two entries in the accused's service record from which it appeared that both of the prior unauthorized absences were terminated by surrender. In spite of this showing, the law officer admitted the prosecution documents. He also admitted the entries relied upon by the accused. At the same time, and again in his final instructions, he told the court it could not consider the evidence as showing the bad character of the accused, but only "for the purpose of showing the course of conduct which may be considered by the court in determining whether or not the accused had the requisite intent" to remain away permanently.

Evidence of acts of misconduct by an accused other than those charged is generally inadmissible. █ United States v. Yerger, 1 USCMA 288, 3 CMR 22. However, such evidence is admissible, if apart from showing bad moral character of the accused it has substantial value as tending to prove a fact in issue. Thus, several categories of admissibility are well-recognized. If the evidence meets the requirements of any of these, it is admissible, even though it may have other incidental effects that are unfavorable to the accused. United States v. Valencia, 1 USCMA 415, 4 CMR 7. Two of these categories are relevant here. The Manual for Courts-Martial sets them out as follows:

". . . (3) When it tends to prove guilty knowledge or intent, if guilty knowledge or intent is an element of the offense charged.

. . . . . .

(4) When it tends to prove motive." [Manual for Courts-Martial, United States, 1951, paragraph 138g, pages 245–246.]

Both the Government and the accused agree to these general rules. However, they differ on their application to the facts. In that difference, each relies upon our opinion in United States v. Powell, 3 USCMA 64, 11 CMR 64. The accused stresses the substantial difference in number between the absences here and those in the Powell case. On the other hand, the Government emphasizes the relevancy of the absences, rather than the number. Actually, the respective contentions pivot on the same question, namely, do the prior acts of misconduct "shed light clearly on the accused's mental attitude"? United States v. Powell, supra, page 70. If it satisfies any of the requirements for admission, a single other offense is as much admissible as multiple acts of misconduct. Cf. United States v. Jones, 2 USCMA 80, 6 CMR 80. In the Powell case, the prosecution relied upon a series of eighteen absences and confinements to show the accused's intent to remain away permanently. However, in United States v. Deller, 3 USCMA 409, 12 CMR 165, we sustained the admissibility of evidence of half that number of absences and confinements, as bearing directly on the accused's intent to prevent completion of his basic training. See United States v. O'Neil, 3 USCMA 416, 12 CMR 172. In our opinion, the evidence of misconduct in this case is distinctly relevant to the determination of the accused's guilt of the particular offense charged.

Taken as a whole, the evidence reveals an integrated course of conduct which throws light on the accused's intent

during the absence charged. After an unauthorized absence of over two and one-half months, the accused remained in military control for only one week. He ended this brief return to the service not just by a second absence, but by one accompanied by a breach of arrest. These circumstances reduce the significance of the surrender which terminated the accused's first absence.

Surrender usually provides the basis for an inference that the accused did not intend to remain away permanently. But, standing alone, it does not compel that conclusion. It is just a factor to be weighed along with other evidence. United States v. Cirelli, 1 USCMA 568, 4 CMR 160. It may, in fact, indicate only repentance. Certainly, the accused's breach of arrest only a week after his return from a long unauthorized absence would tend to indicate that the accused believed he made a mistake by returning to the service, and that he should have stayed away permanently. His later conduct gives force to this inference. After remaining away for a second lengthy period, he again returned. The record does not show his status after this return, but it affirmatively appears that he was tried, convicted, and confined for his earlier offenses. Immediately after his release from confinement, he once more absented himself. This time he was gone almost two and one-half months; and the absence was terminated by apprehension. It is, therefore, not unreasonable to conclude that, having twice surrendered, and twice regretted that act, the accused determined, during his third absence, to remain away permanently. Consequently, in relation to all the evidence, the fact of surrender lessens but does not, as a matter of law, so far outweigh the significance of the other evidence as to require its exclusion.

In its entirety, the evidence shows a course of conduct which supports an inference that, during the absence charged, the accused intended to remain away permanently. Since it was relevant, it was properly admissible. The weight to be given to it is for the triers of fact to determine. United States v. Strong, 1 USCMA 627, 5 CMR 55. Accordingly, the law officer was correct in denying the accused's objection to the admission of the documentary evidence.

The decision of the board of review is affirmed.

LATIMER, Judge (concurring):

I concur.

As I interpret the exhibits they are relevant as bearing on an intent to avoid military service. While ▆▆▆▆ among other factors they establish two voluntary returns to military control, the motives actuating the accused to return do not appear. Quite often an errant serviceman is convinced against his will by his friends or relatives to return and escape possible prosecution for desertion, and an unexplained return does not always establish an intent to remain with the service. An accused's return ought to be evaluated in the light of his total course of conduct over the period involved. In this instance we find that, in a fourteen-month period of time, accused went absent without authority three times; and he was either in that status or in confinement each and every day of that period. When he went absent the second time, he was awaiting trial for the first offense, and he was in an arrest status at the time he departed. When he left without authorization on the third occasion, he had just been released from eight months' confinement. While it may be asserted by some that the exhibits do not show an intent to remain away permanently, that is not the manner in which I would interpret them. They seem to me to suggest that the Naval service was so distasteful to the accused that he could only be found on station when he was under some form of restraint.

Stated specifically by date, the record discloses that on May 13, 1952, accused went absent without leave. He remained in that status until July 30, 1952, when he surrendered at Roanoke, Virginia, which was not his home station. On his return to his unit at Norfolk, Virginia, which was some time after his return to military control,

he was placed in arrest awaiting trial on his first absence offense. One week later, on August 7, 1952, he broke arrest by again going absent without authority, and he did not return from that absence until September 21, 1952. On that return to his station, he was charged with committing three offenses, namely, the two absences without authority and the breach of arrest. On December 11, 1952, a general court-martial convicted him of the three offenses and sentenced him to six months' confinement. He finished serving his time on those charges on or about May 11, 1953, and upon gaining his freedom, he left his station without authority for the third time. That absence extended for some 72 days before it was ended involuntarily by the Federal Bureau of Investigation. Pretermitting any consideration about the loss of time after his last apprehension, accused was not present for duty at any time from May 13, 1952, until July 24, 1953. Notwithstanding two unexplained voluntary returns, the complete picture painted by the exhibits show him as a person who has a profound and utter dislike for the Naval service. While it may be true that under certain circumstances a number of absences without authority may be shown without casting light on an intent to remain away permanently, under different conditions three departures, coupled with other facts which show a adamant refusal to serve, may help in furnishing a proper base for an inference of an intent not to return. Certainly, one who prefers to spend his time in either being absent or held in confinement for long periods of time is more apt to conclude he will not return to his service when he has secured his freedom than is one who stays within the law and performs his duty. Furthermore, the experience encountered in doing eight months in confinement for his previous delicts may carry some weight in causing an accused not to return until compelled to do so.

I believe the law officer, when he considered the admissibility in the out of court hearing, arrived at the correct conclusion. In support of his ruling he made the following statement:

"Notwithstanding the fact that the two previous absences were terminated by surrender, the law officer feels that all of the exhibits taken as a whole show that the accused has been either absent from military authority without proper authority or has been in confinement for a period exceeding 14 months. That is down through the date the present offense is alleged to have terminated, namely 24 July 1953. I feel that this fact does bear in some degree on the question of intent of the accused and that view is stated regardless of the manner of the termination of the previous absences. They would certainly indicate to me that for some reason known to the accused, and unknown to me, that he is probably dissatisfied with the military service in some manner. Paragraph 164a of the Manual on page 314 indicates that the inference of an intent to desert may be drawn from among other things: 'that he was dissatisfied in his company or on his ship or with the military service;'. I think in view of the language in the Powell case and particularly so in view of the language of the concurring Judge Brosman, Prosecution Exhibits Numbers 1, 5, and 6 for Identification are admissible, and I intend to admit them."

I am content to support the reasons he sets out in the quotation and I, therefore, join the Chief Judge in his affirmance.

BROSMAN, Judge (dissenting):

The accused was tried for desertion with intent to remain away permanently. The evidence that the two prior unauthorized absences had been terminated by surrender suggests to me the very antithesis of such an intent, and that—for whatever reason—the accused was no more than a "recidivist absentee," and not one who sought to leave the Navy once and for all. See my dissent in United States v. Knoph, 2 USCMA 108, 6 CMR 108. Accordingly the minimal relevance of the prosecution evidence of prior absences, weighed against the probability of dam-

age to the accused from its acceptance in this particular type of case, leads me to conclude that the evidence in question was inadmissible.

If, however, the accused had been charged with unauthorizedly absenting himself with intent to shirk important service—as proscribed by Article 85 (*a*) (2) of the Uniform Code—I incline to believe that this same evidence would have been admissible. Certainly an infinitely stronger case for its acceptance *might* be made out. See United States v. Deller, 3 USCMA 409, 12 CMR 165; United States v. O'Neil, 3 USCMA 416, 12 CMR 172. In that context, the termination of the prior absences by surrender would be much more nearly consistent with an intent on the accused's part to prevent his rendition of important service.