UNITED STATES

v.

Private (E–2) David L. DAWKINS, 034–44–2709, US Army, Company B, 3d Battalion, School Brigade, US Army Signal School, Fort Gordon, Georgia 30905.

CM 433344.

U. S. Army Court of Military Review.

Sentence Adjudged 22 April 1975.

Decided 7 June 1976.

Appellate Counsel for the Accused: Joseph A. Finlayson, Jr., Esquire; CPT Derryl W. Peden, JAGC; CPT John C. Carr, JAGC; LTC James Kucera, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Jack M. Hartman, JAGC; CPT Lee D. Schinasi, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

## OPINION OF THE COURT

COSTELLO, Judge:

Appellant was convicted by a military jury of solicitation to commit perjury and wrongfully communicating a threat, both in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934. The sentence adjudged and approved is set out above. None of appellant's attacks on the trial outcome warrant relief, but several merit discussion.

### I

Dawkins was a friend of two soldiers, Wynn and Davis, who were being tried for robbery. On the first night of Wynn's trial and the day before Davis's began, Dawkins visited the victim, Taylor. While at the latter's barracks Dawkins attempted to induce Taylor to testify that he could no longer recognize Wynn and Davis, and promised to return his money. Dawkins then assured Taylor that he knew about court procedure, having been through it himself; he also threatened Taylor with physical harm.

■ Taylor reported to the military police that a man named Dawkins had made the visit just described. He then testified damagingly as the principal witness against both Wynn and Davis, but no evidence of Dawkins' visit was put before either jury.[1] Taylor was also the principal witness against appellant, Dawkins, and appeared in that case before the same jury which had tried Davis.[2]

At trial below, Dawkins was represented by civilian counsel and by the same military counsel who had defended Wynn. Prior to Dawkins' trial, his military counsel petitioned the convening authority for a new jury because the principal witness against Dawkins had previously appeared before and been believed by them. That petition was denied.

■ We are satisfied beyond reasonable doubt that Dawkins visited Taylor; that Taylor identified Dawkins in his report of the incident and at trial from his own recol-

---

1. *United States v. Davis*, CM 433094, and *United States v. Wynn*, CM 433000, both of which records are filed with this Court. We may "notice" them. *United States v. Curtis*, 1 C.M.R. 807 (AFBR 1951).

2. Trial counsel in this case was obviously in error when he told the military judge that the Dawkins' jury had not been previously sworn.

lection;[3] that Dawkins made the statements alleged; and that he made them with the intent to influence Taylor's testimony wrongfully on pain of physical injury. These findings dispose of appellant's general attack on the sufficiency of the evidence against him.

## II

■ A specific part of appellant's attack on the evidence against him is his assertion that a special court-martial promulgating order was erroneously admitted into evidence. That order established that appellant had been tried and acquitted on several charges and was offered on the issues of identity and alibi. It had "substantial value" in tending to show that appellant was accurately identified as the man who said to Taylor "I've been through something like this before, but I was lucky." *United States v. Graham,* 5 U.S.C.M.A. 265, 17 C.M.R. 265 (1954).

■ The attack on the admissibility of that order proceeds from an analogy to the general civilian rules concerning the inadmissibility of prior acts of misconduct and previous convictions. Ignoring for the moment that evidence of an acquittal has a slighter potential to influence a jury adversely than does evidence of a crime, we note that evidence of criminal *acts* may be admitted on a number of trial issues. Paragraph 138*g*, Manual for Courts-Martial, United States, 1969 (Revised edition) (MCM 1969 (Rev.)). Particularly relevant here is the rule that evidence of the commission of criminal acts may be accepted in rebuttal of an alibi defense. *People v. Jackson,* 9 Ill.2d 484, 138 N.E.2d 528, 532 (1956); *People v. Lenhardt,* 340 Ill. 538, 173 N.E. 155 (1930); 1 Wharton, Criminal Evidence § 258 (13th ed.). This is true even if a trial for committing those acts resulted in acquittal. *Buatte v. United States,* 9 Cir., 350 F.2d 389 (1965); Wharton, *supra,* § 262.

The evidence offered here meets the standards of relevance, competence and utility which caused development of those exceptions to the general rule of inadmissibility just noted. Further, it does not excite the same degree of concern about prejudicial impact on the jury; information that an accused had been tried and acquitted is less likely to arouse the "bad man" idea than is evidence of specific misconduct. Despite that lesser risk, the trial judge here was scrupulous in keeping all information about the nature of the acts charged from the jury. He admitted the order, but then recited the facts of trial and acquittal aloud; the jury never saw the order or heard testimony about its contents. Finally, the judge instructed the jury fully that the evidence was to be considered only on the narrow issue of identity. In this manner, the trial judge achieved a reasonable balance between the need for using available evidence and the risk of undue harm to an accused. Rules 403 and 404, Federal Rules of Evidence (1975).

In these circumstances, we hold that evidence of a prior acquittal on criminal charges is admissible on the issue of identity of an accused. *See Hernandez v. United States,* 370 F.2d 171 (9th Cir. 1966); *United States v. Hawn,* 49 C.M.R. 553 (A.C.M.R. 1974); paragraph 138*g*, MCM 1969 (Rev.).

## III

■ Two more subordinate issues not related to appellant's principal attack on his conviction remain for discussion. The first is that the two specifications upon which he was tried are multiplicious. We found above that the solicitation and communication charged did occur in the same short conversation with Taylor. However, verbal skills alone do not negate or excuse criminal culpability. Our analysis of appellant's statements discloses that he threatened two clearly protectable social values, the integrity of the criminal justice process and the physical security of a fellow soldier. That he was able to include a bribe offer and a

---

**3.** A photographic "line up" between Taylor's report and the trial did not taint the in-court identification. *See Simmons v. United States,*

390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968).

personal threat in a few words does not alter their essential disparity, nor does it obscure the duality of the potential product of his statements. Despite his economy, two crimes were committed and two are punishable. *United States v. Burney*, 21 U.S.C.M.A. 71, 44 C.M.R. 125 (1971); *United States v. Wilson*, 41 C.M.R. 799 (N.C.M.R. 1969); *United States v. Tigner*, 32 C.M.R. 640 (A.B.R.1962).

█ The second of these subordinate issues is appellant's claim, newly offered at this level, that the trial judge failed to advise him fully concerning his right of allocution. The trial judge did not say all he might have said on the subject, but he said and did quite enough to assure that appellant was properly treated at trial. Appellant was represented by both civilian and military counsel who assured the trial judge that appellant knew his choices, but had elected to make a sworn statement after findings. This was patently an informed election; his counsel conducted an active defense predicated on innocence, the good character of the accused and his fine family background. A failure to testify under oath and submit to cross-examination would have risked giving the lie to his whole trial strategy. In this posture of the case, further inquiry by the trial judge would have been more likely to impair the relationship between accused and his counsel than it would have been to disclose some inadequacy in their advice to their client or the latter's misgivings about the choices made. Consequently, we hold that appellant suffered no injury from this exercise of the trial judge's overall responsibility for the conduct of the trial. *United States v. Graves*, 23 U.S.C.M.A. 434, 50 C.M.R. 393, 1 M.J. 50 (1975).

## IV

The major issue in this case is appellant's claim that he was denied an impartial jury because the jury which tried him had previously heard and believed Taylor, his accuser, at the trial of Davis. Our analysis begins early in appellant's trial.

When asked if he had any motions, military defense counsel initiated the following exchange:

"DC: Your honor, the defense does have a couple of matters. Number one, the defense's document being a request for appointment of new court members and denial by the convening authority that we would like to have marked as an appellate exhibit, if there is no objection by the government or by you.

"TC: It would be Appellate Exhibit 1.

MJ: It's got to be one, because there's no request for trial by judge alone, Appellate Exhibit 1.

(Appellate Exhibit 1 was marked.)

MJ: You just want to enter it on the record; is that correct?

DC: Yes, your honor, simply that.

MJ: The document will be appended as Appellate Exhibit 1."

Thereafter, individual counsel conducted a thorough *voir dire* which did not disclose any grounds for challenge or recollection of prior association with this case. When opening statements had been concluded and the Government announced Private Taylor as its first witness, the military judge (who had sat at both robbery trials) interrupted and called Taylor before the court. He then permitted counsel to reopen the *voir dire*, but no challenges were prompted by the jury's recognition of Taylor.

We take no immediate position concerning the possibility that appellant waived his challenge to the panel by failing to do more at trial than ask to have his pretrial request for a new panel appended to the record. If that failure amounted to waiver, appellant is clearly out of court on his present objection. *United States v. Crawford*, 15 U.S.C.M.A. 31, 35 C.M.R. 3 (1964) [*Citing Shotwell Mfg. Co. v. United States*, 371 U.S. 341, 83 S.Ct. 448, 9 L.Ed.2d 357 (1963).]

In *Crawford*, the Court of Military Appeals put aside the question of waiver in order to reach the merits of an attack on the jury selection process. The question here is of similar import and involves the resolution of certain factual issues, so we proceed in the same way. We deal with the

attack appellant made before trial, that the jury was committed to the credibility of Taylor, and two new grounds of attack. These are assertions that the *Davis* and *Dawkins* cases are "related" and that the jury had "prior knowledge" of the present case.[4] We will dispose of these in inverse order; the claim of prior knowledge raises a clear Sixth Amendment issue. *Casias v. United States*, 315 F.2d 614 (10th Cir. 1963).

 A trial court must excuse a juror if it has any "lingering doubt" concerning the impact of prior knowledge on a juror's impartiality; the same test is to be applied by an appellate court making its own independent evaluation. *State v. Van Duyne*, 43 N.J. 369, 204 A.2d 841 (1964), *cert. den'd* 380 U.S. 987, 85 S.Ct. 1359, 14 L.Ed.2d 279 (1965). As noted above, we have examined the *Davis* record of trial. It contains no reference to Dawkins by name and no evidence of his efforts to influence the testimony of Taylor. Further, there is no hint of newspaper publicity or other extra-judicial knowledge acquired by any juror which is typical of the "prior knowledge" cases. *See generally* 47 Am.Jur.2d, Juries, § 276. Consequently, we find the claim of prior knowledge to be utterly without foundation in fact.

 Appellant's second assertion, that the *Dawkins* and *Davis* cases are "closely related," strikes some of the same chords as the claim of prior knowledge. In our military practice, the claim that cases are closely related is customarily made as to successive trials of coactors and accomplices. These necessarily involve common factual settings and the jury at the second trial has some "prior knowledge" acquired at the first trial. *See* e. g., *United States v. Jones*, 34 C.M.R. 642 (ABR 1964); *United States v. Strawbridge*, 21 C.M.R. 482 (ABR 1956); *United States v. Curtis*, 1 CMR 807 (AFBR 1951). A reasonable extension of this concept of the closely related case occurred where the jury who had tried a woman for keeping a bawdy house was found disqualified to sit at the trial of a man for adultery with her because the adultery charged was an instance of "keeping" in the first trial. Annotation, 176 A.L.R. 761, *citing Kleindienst v. United States*, 48 App.D.C. 190.

On the other hand, jurors who had served at the trial of one Kirkpatrick for bastardy were not incompetent to serve at a later trial of his father for attempting to bribe the prosecutrix to withhold her evidence against his son. The prosecutrix testified at both trials, but the court found that the ". . . two cases were entirely different offenses . . . ." *Kirkpatrick v. State*, 177 Ark. 1124, 9 S.W.2d 574, 576 (1928) [*Cited* with approval on other grounds in *Laurence Barker, Inc., v. Briggs*, 39 Cal.2d 654, 248 P.2d 897, 902 (1952); *Sorrentino v. State*, 214 Ark. 115, 214 S.W.2d 517 (1948); 53 A.L.R.3d 926.] We find the distinction between two offenses, though separate, arising from one transaction (*Kleindienst*) and two offenses arising from two separate transactions (*Kirkpatrick*) persuasive and hold that appellant's case was not "closely related" to *Davis*.

Just as the cases with problems of juror's prior knowledge shade into those where the dominant problem is close relationship of the factual settings, so do those cases with common points though not "related" tend to have another element which may be separately objectionable. Even if the offenses are totally distinct in nature and time of commission, some of the witnesses may be the same. The repetitive use of witnesses raises the possibility that a juror will acquire a fixed opinion concerning the credibility of a witness and lose his impartiality. The preponderance of those cases in civilian practice have been prosecutions for violation of federal alcohol and drug laws where one investigator or informer has the principal evidence against a number of accused who come to trial for unconnected offenses

---

4. Appellant's Supplemental Assignment of Error contains references to the jury in *U. S. v. Wynn.* We take this to be a misstatement of the name. Appellant's first objection before trial refers to *U. S. v. Davis* (Appended to the Record as App.Ex. I). Our inspection of the convening orders and records in both *Davis* and *Wynn* persuades us that the panels were identical in *Davis* and *Dawkins* and entirely different in *Wynn*.

during the same term of court and encounter the same jurors.

Although to be avoided in the exercise of caution, the circumstances of this case contain no error. ". . . [T]he federal courts have uniformly [held that a] juror is not disqualified merely because he has previously heard a similar case arising out of a separate and distinct set of circumstances even though . . . the same witnesses testifying in the second case also testified in the earlier one." *United States v. Ragland*, 375 F.2d 471, 476 at note 2 (2d Cir. 1967) [Citing cases].[5] Where the circumstances of the offense are the same and so are the witnesses, the *issues* are the same and an accused is entitled to have a juror excused on timely motion. *Everitt v. United States*, 281 F.2d 429, 438 (5th Cir. 1960). However, where the cases are merely "similar," the differences of distinct offenses and new sources of evidence mean that the credibility of a former witness must be "weighed anew." Therefore his presence is not objectionable, *per se. Wilkes v. United States*, 291 F. 988 (6th Cir. 1923). [Cited with approval in *Ragland, supra.*] *Accord, Casias v. United States*, 315 F.2d 614 (10th Cir. 1963), *cert. den'd*, 374 U.S. 845, 83 S.Ct. 1901, 10 L.Ed.2d 1065 (1963).

Here there was but one common witness, albeit the principal one. The offenses were entirely distinct, as in *Kirkpatrick*, and hotly contested issues of identity, alibi, and intent were litigated at trial. As to each of those issues, there were new witnesses and sources of evidence which directly controverted Taylor's testimony. His credibility was clearly in issue in an entirely different context. Further, all the jurors gave assurances of impartiality on *voir dire* and again after the trial judge had reopened it, *sua sponte*, when the Government first called Taylor and the jury recognized him. In these circumstances we hold that the military judge could have properly denied a challenge, even had one been timely and clearly made. Paragraph 62, MCM 1969( Rev.). Thus, there was no error.

Accordingly, the findings of guilty and the sentence are affirmed.

Senior Judge CLAUSE and Judge DONAHUE, concur.

**UNITED STATES**

---

5. There is wide and irreconcilable disparity in the state practice. 160 A.L.R. 767.