UNITED STATES, Appellee,

v.

Chief Warrant Officer Two Elmer G. OWENS, Jr., SSN 348–38–7561, United States Army, Appellant.

CM 442375.

U.S. Army Court of Military Review.

31 Aug. 1983.

Captain Donna Chapin Maizel, JAGC, argued the cause for the appellant. With her on the pleadings were Colonel William G. Eckhardt, JAGC, Lieutenant Colonel R. Rex Brookshire II, JAGC, Major Robert C. Rhodes, JAGC, and Major Lawrence F. Klar, JAGC.

Captain Karen A. Charbonneau, JAGC, argued the cause for the appellee. With her on the pleadings were Lieutenant Colonel John T. Edwards, JAGC, and Captain Patrick M. Flachs, JAGC.

Before HANSEN, CLARKE and BADAMI, Appellate Military Judges.

## OPINION OF THE COURT

BADAMI, Judge:

On appeal we have before us the conviction of Chief Warrant Officer Two Elmer G. (Gari) Owens, for the unpremeditated murder of his wife, Mary Owens, and his possession of an unregistered firearm, violations of Articles 118 and 92, Uniform Code of Military Justice, 10 U.S.C. §§ 918 and 892 (1976). A general court-martial composed of officer members sentenced appellant to a dishonorable discharge, confinement at hard labor for 25 years, and total forfeitures. The principal issues in this appeal concern the sufficiency of the evidence to sustain the conviction of unpremeditated murder and the admissibility of certain impeachment evidence. We affirm finding there is sufficient evidence to sustain the conviction and that the military judge did not abuse his discretion when he permitted trial counsel to examine appellant concerning false statements made on his warrant officer application. These statements included appellant's arrest for assault and battery of his former wife.

## I

On 4 September 1981, Gari Owens was apprehended for the murder of his wife, Mary Owens. She died in the early morning hours of 4 September as a result of a single gunshot which entered her back causing a large laceration of the liver and perforation of the breathing muscle. Death was due to excessive bleeding. At the time Mary Owens had been driving the couple's Volkswagen Rabbit down the street from their quarters at Fort Campbell, Kentucky. Gari Owens held the 30.06 rifle mounted with a "Bushnell 4" telescopic sight which fired the fatal bullet.

At trial the government introduced evidence to show that Gari Owens fired the weapon in anger following a domestic quarrel and that Owens intended his wife's death or grievous bodily harm. In defense Owens took the stand. An experienced hunter and marksman, Owens claimed that he had been standing in front of his house examining his rifle and that he had chambered a round and cleared the weapon by pulling the trigger. He maintained that his wife's death was a tragic accident.

There are hundreds of pages of testimony by neighbors, acquaintances, hospital personnel and criminal investigative agents. We deem it unnecessary to delineate all of it, however, a short summary is in order.

Gari and Mary Owens had been married approximately two years. Although there was testimony that they were a couple who loved each other, there was also evidence that their marriage was filled with discord. Mary Owens had a habit of going out without her husband and staying out late. Owens was not happy with his wife's behavior. Some months earlier Owens had gone to Colonel Wilburn McCormick, the Deputy Commander and Chief of Professional Services at Fort Leonard Wood, Missouri (Owens' then station assignment), for the purpose of requesting leave in order to obtain a divorce or separation.

The night of the shooting Gari and Mary Owens had been at the Fort Campbell Officers' Club. Acquaintances who accompanied them testified that Mary Owens had

decided to go out on the town without her husband even though the other women in the group had decided that it was too late for them to go out again that evening. The group departed the club shortly after 2325 hours.

At approximately 2330 hours, Mrs. Donna Parades was present in her home tending her three-year-old son who was sick. Mrs. Parades' quarters face Shanan Drive which is but a short distance from the Owens' quarters also on Shanan Drive. She testified that she heard loud voices in argument coming from in front of her quarters and recognized one of the voices as that of a woman.

Criminal investigators later discovered that Mary Owens had her own set of keys to her husband's car in her purse and had taken her husband's set of keys when she left their apartment. Normally, Gari Owens hung his set of keys for his car by the door. Also, although the night was cool, Mary Owens did not wear the vest she was wearing earlier that evening, nor was she wearing shoes when she drove away from their quarters in her husband's car.

■ A fundamental proposition in the American system of justice is that one accused of a crime is presumed innocent until proven guilty beyond and to the exclusion of a reasonable doubt. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). It is the government's responsibility to carry this burden. When the only proof of guilt is circumstantial, no matter how strongly the evidence suggests guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence. *MacArthur v. State,* 351 So.2d 972 (Fla.1977).

■ In order to prove its case against Gari Owens the government was obliged to demonstrate that Owens intended that his wife suffer death or grievous bodily harm. The triers of fact in their determination of this issue could infer that Gari Owens intended the natural and probable consequence of his voluntary act. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61

L.Ed.2d 39 (1979). Indeed, the likelihood that an experienced hunter such as Owens would handle a dangerous weapon in such a negligent manner is beyond belief. Other evidence suggests that the appellant's actions were willful and intentional and not accidental. The marital difficulties that Gari and Mary Owens experienced, the evidence that on the night of the shooting an argument had occurred, and that Mary had fled the house not wearing her shoes or vest, all points to the conclusion that Owens' actions were deliberate and willful.

II

The remaining issue concerns the admissibility of certain impeachment evidence. An Article 39(a), UCMJ, 10 U.S.C. § 839(a), session was held in which trial counsel requested and was granted permission to question appellant concerning false statements in the appellant's application for warrant officer. Pursuant to that ruling, the following exchange took place in the presence of the court members.

Questions by assistant trial counsel:

Q. Mr. Owens, isn't it a fact that as to your application for appointment as a Warrant Officer in the United States Army and the statement of personal history attached to it, that you knowingly omitted the fact from questions 19 and 18, that you had been convicted in Daleville, Alabama, for the possession of marihuana and marihuana paraphernalia in 1976?

A. No Sir.

Q. Is it not a fact that you intentionally omitted from both of these documents the fact that you had been arrested in 1976 in Daleville, Alabama, for assault and battery on your second wife, Mrs. Jennifer Conant Braun?

A. No, sir.

Q. Is it not a fact that you omitted from both of these documents, the fact that you had been convicted in Enterprise, Alabama, for carrying a .22 caliber pistol in your automobile without a permit in 1976?

A. It was admitted—it was omitted, rather. I did not knowingly omit it.

Q. You did not knowingly omit it?

A. I did not omit it.

Q. Mr. Owens, isn't it a fact that you knowingly omitted all three of these matters from those two documents because you realized that if you put them in there, you likely would not become the Warrant Officer that you wanted so badly to become?

A. No, Sir, that's not true.

The following cautionary instruction was given by the military judge to the court members prior to their deliberations:

> Now, there was certain evidence in this case which I admitted for certain limited purposes. Specifically on cross-examination of the accused, the trial counsel presented the accused with a document which was not offered in evidence but this line of questioning was engaged in for the limited purpose of determining the credibility of the accused as a witness.
>
> \* \* \* \* \* \*
>
> Now, as I mentioned, that line of questioning and answers were admitted only for the purpose of your assessing the credibility of the accused as a witness, whether he did or did not intentionally lie in those documents.

■ Appellant concedes that the falsification of a warrant officer application is probative of untruthfulness and a proper inference could be drawn that an individual who failed to give truthful answers to questions on his application for warrant officer would be more likely to give false testimony at a court-martial. *United States v. Feagans,* 15 M.J. 667 (A.F.C.M.R.1983). However, appellant contends that the evidence should have been excluded since there exists a second inference that the accused is a bad person who has a propensity for violence upon his wife. Appellant cites Mil.R.

Evid. 404(b) which provides that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." [1] A similar consideration is found in Mil.R.Evid. 403 which provides that relevant evidence may be excluded if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." In this context "unfair prejudice" exists if the evidence is used for something other than its logical, probative force. The possibility that the fact finders might dramatically over estimate the value of the evidence or be confused as to its probative meaning, often will result in prejudice to an accused. S. Saltzburg, L. Schinasi and D. Schleuter, Military Rules of Evidence Manual 177 (1981).

■ The balance between probity and prejudice is a matter for determination by the military judge and his determination should not be reversed unless there is a clear abuse of discretion. *United States v. Teeter,* 16 M.J. 68 (C.M.A.1983); *United States v. Dawkins,* 2 M.J. 898, 900 (A.C.M.R. 1976). *See United States v. Beecham,* 582 F.2d 898, 911 (5th Cir.1978) (en banc) *cert. denied* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979). We find that the military judge acted within his sound discretion in admitting the evidence.

■ In the present case the issue of the accused's credibility was a critical one. As there were no eyewitnesses to the crime other than Gari Owens, it was entirely proper for the government to inquire into the accused's propensity to lie for his personal gain or self-protection. *United States v. Feagans, supra; United States v. Ramirez,* 622 F.2d 898 (5th Cir.1980). The

---

1. Of course, it may be admissible for other purposes, such as proof motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Mil.R.Evid. 404(b). The evidence in the present case was not offered for any of these stated purposes, but, rather, was offered as impeachment evidence under Rule 609. We need not rule on whether 404(b) provides a general rule of exclusion in view of Rule 403 which clearly is intended as a general rule of exclusion of otherwise relevant evidence.

evidence was of substantial probative value in determining whether the accused was truthful in testifying that the fatal shooting was an accident. Balanced against this probative evidence was the possibility that the evidence tended to depict the accused as a "bad man." However, this risk was minimized by the military judge's limiting instruction that the evidence of the arrests and conviction could be considered, if at all, only for the limited purpose of assessing the credibility of the accused, and that the court members were not to draw any improper inferences from the evidence. In these circumstances, we hold that the military judge did not abuse his discretion and that the evidence was properly admitted to impeach the credibility of the accused.[2]

We have considered the other assignment of errors and find them to be without merit. Accordingly, the findings of guilty and the sentence are affirmed.

Chief Judge HANSEN and Senior Judge CLARKE concur.

2. In a case where there is a possibility that the offered evidence shows the appellant as a "bad man," we believe that it would be better practice to keep the nature of the act from the jury. *United States v. Dawkins,* 2 M.J. 898, 900 (ACMR 1976). The defense counsel shares a responsibility in this regard and his failure to request such an alternative is a factor to be considered in ruling on the reasonableness of the military judge's determination. *See* Mil.R. Evid. 103.